IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | Case No.: _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| THE UNIVERSITY OF IOWA; | ) | |
| KRISTA KRONSTEIN, in her individual | ) | |
| and official capacity as Investigator in the | ) | |
| Office of Student Accountability; | ) | |
| KRISTAL GIBSON, in her individual and | ) | |
| official capacity as Associate Director in | ) | |
| The Office of Student Accountability; | ) | |
| And TONYA UDEN-HOLMAN, in her | ) | |
| individual and official capacity as Associate | ) | |
| Provost for Undergraduate Education, | ) | |
| | ) | |
| Defendants. | ) | |

William L. Kutmus
Lead Counsel
Trever Hook
Kutmus, Pennington & Hook, P.C.
5000 Westown Parkway, Suite 310
West Des Moines, IA 50266
Tel: (515)288-3339
Fax: (515)288-8629
Email: jodi@kphlawfirm.com
Email: trever@kphlawfirm.com

S.P. DeVolder
The DeVolder Law Firm, P.L.L.C.
1228 Sunset Drive, Suite C
Norwalk, IA 50211
Tel: (515)981-5150
Fax: (515)981-5156
Email: steven.devolder@devolderlawfirm.com

ATTORNEYS FOR THE PLAINTIFF

Plaintiff John Doe, by and through his undersigned counsel, files this Complaint against (1) the University of Iowa ("Iowa" or "UI" or "university") for violations of Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a); and (2) against UI Title IX investigator in the Office of Student Accountability Krista Kronstein, Title IX associate director in the Office of Student Accountability Kristal Gibson, and associate provost for Undergraduate Education Tonya Uden-Holman for violations of plaintiff's due process and equal protection rights guaranteed under the Fourteenth Amendment of the United States Constitution, actionable pursuant to 42 U.S.C. § 1983. In support of this Complaint, plaintiff states as follows:

## INTRODUCTION

In the spring semester of 2021, the plaintiff was a sophomore undergraduate student at UI. Plaintiff alleges that UI treated him differently from similarly situated female students on the basis of his male sex, as well as treated him in a discriminatory matter based singularly or predominately on his male sex or gender, beginning when UI's Office of Student Accountability initiated administrative charges against him for purported violations of the Sexual Misconduct Policy and Code of Student Life and culminating in his expulsion from the university on these charges. This action constituted a violation of the plaintiff's rights under Title IX, which states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681.

Plaintiff also alleges that university officials Kronstein, Gibson and Uden-Holman violated the plaintiff's rights to due process guaranteed by the 14th Amendment to the U. S. Constitution to be free from arbitrary and haphazard suspension or expulsion, by conducting a biased and discriminatory investigation, hearing and ultimate ruling and based singularly or predominately on

his male sex or gender, as well as violated his rights to equal protection of law guaranteed by the 14th Amendment to the U.S. Constitution to be free from discrimination while participating in an education program on account of his male gender.  Plaintiff enjoys a property interest entitling him to such constitutional protections, established by the plaintiff's payment of tuition fees, and also by policies and procedures enacted by UI that substantially limits its ability to suspend or expel students except for cause and only after notice and an opportunity for hearing and being accorded proper due process procedures and equal protection rights in such a hearing and during the decision-making process. The ultimate expulsion caused the plaintiff to be removed from the university and during his coursework mid-academic semester, forfeiting his tuition and academic credit and further damaging him in placing the expulsion on his transcript, preventing him from completing his studies at the university, and impairing his ability to obtain admittance to comparable education programs at other university institutions.

## THE PARTIES

1.      Plaintiff John Doe during all times relevant to this Complaint was a resident and domicile of the State of Iowa, residing in the City of Iowa City. He remains a resident and domicile of the State of Iowa.

2.      Defendant University of Iowa is a public institution of higher learning, incorporated by the State of Iowa, operated by the Iowa Board of Regents, and is an arm of the State of Iowa.

3.      Defendant Krista Kronstein is a UI Title IX investigator in the Office of Student Accountability and is sued in her official and individual capacities.  In her actions set forth herein, Kronstein is alleged to have been acting under color of statutes, regulations, customs and usages of the State of Iowa. Her actions were taken in the course and scope of her employment with UI, with UI's actual or apparent authority and/or with the UI's knowledge and acquiescence. Her

actions render her liable for violations of the plaintiff's constitutional rights under 42 U.S.C. § 1983.

4.      Defendant Kristal Gibson is a UI Title IX associate director in the Office of Student Accountability and is sued in her official and individual capacities.  In her actions set forth herein, Gibson is alleged to have been acting under color of statutes, regulations, customs and usages of the State of Iowa. Her actions were taken in the course and scope of her employment with UI, with UI's actual or apparent authority and/or with the UI's knowledge and acquiescence. Her actions render her liable for violations of the plaintiff's constitutional rights under 42 U.S.C. § 1983.

5.      Defendant Tonya Uden-Holman is UI associate provost for Undergraduate Education and is sued in her official and individual capacities.  In her actions set forth herein, Uden-Holman is alleged to have been acting under color of statutes, regulations, customs and usages of the State of Iowa. Her actions were taken in the course and scope of her employment with UI, with UI's actual or apparent authority and/or with the UI's knowledge and acquiescence. Her actions render her liable for violations of the plaintiff's constitutional rights under 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343(a)(3) (violation of civil rights) because the plaintiff's claims arise under the United States Constitution, brought pursuant to 42 U.S.C. § 1983, as well as the laws of the United States including Title IX of the Educations Amendments of 1972, 20 U.S.C. §§1681, et seq.

7.      In addition to monetary relief, the Court has authority to issue declaratory and injunctive relief sought hereunder pursuant to 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(l) and (b)(2). The university is a public university located in Iowa City, Iowa, and created pursuant to Iowa statutory law. It is incorporated in and has its principal place of business in the State of Iowa, and is considered to reside in this judicial district and division. In addition, the events and omissions giving rise to the plaintiff's claims occurred with this judicial district and division.

GENERAL ALLEGATIONS COMMON TO ALL COUNTS

The Sexual Assault Allegations and OSA Investigation

9.      On February 24, 2020, the plaintiff was notified, through a Notice of Complaint and Investigation letter, that he was being investigated by the Title IX arm of the university's Office of Student Affairs (OSA), and for an alleged sexual assault—including vaginal intercourse—committed against a certain complaining party (a female student at the UI) that purportedly occurred following a Halloween Party in an apartment complex where the plaintiff lived.  The assault allegedly occurred during the early morning hours of November 1, 2019.  The subsequent investigation was conducted by defendants Kronstein and Gibson.

10.     The investigation was premised on whether the admitted sexual conduct between the couple fell within the scope of "sexual assault" defined in the university's Sexual Misconduct Policy, and this is because the conduct purportedly was "against the will" of the complainant female student and on the basis that she could not have "contested" to the act on the grounds of "incapacity"—in this case, the female supposedly was under "the influence of alcohol" such that she was "temporarily unable to understand what is happening or temporarily unable to control [her] behavior" and such that the plaintiff knew this or reasonably, and from an objective person's standpoint, should have known this.  And all of this appears in the 2019-2020 *Operations Manual,* IV, Ch. 2, § 2.3.

11.     The female student did not even complain to a university official until on or about the end of December 2019, and the university's investigation accordingly did not even commence until January 14, 2020—this was going on three months after the alleged incident.  And from there the investigation proceeded with a single goal in mind: to find the charged male had sexually assaulted the complaining female student; and this was done at the investigation level by the Title IX investigators employing gender discriminatory means and processes, and as they had employed in other cases (and almost universally against the male's interest when the other involved party was female) and in the following ways.

12.     First, the investigators made a point to first interview only the female complainant and her principal listed witnesses; the plaintiff was not even informed that the process was ongoing until over a month later (by the notice letter of February 24, 2020)—and the investigators worked multiple times, both before and after February 24th, with the complaint female student and her listed witnesses, both on their versions of events and in response to when the investigators finally got around to notifying the plaintiff and, even later, finally got around to interviewing witnesses identified by the plaintiff.  And the investigators only conducted multiple interviews, and worked on written statements from the complaining female student's side, including the complainant herself; they did no such thing for the male accused student and that followed the same procedure by these same investigators whenever a male student, either in the complainant or respondent position, was involved in a sexual misconduct investigation.

13.     And that secondly segues into how these investigators routinely approach these cases—whether the male is a complaining party or, as in this case, an accused party—the UI investigators do not work multiple times, let alone even cursory on the single time, that they "interview" the male party's witnesses—those witnesses are summarily dismissed as it pertains to

credibility and on either on or the other of two contradictory grounds: first, if there are substantive

deviations in the statements of the witnesses in support of the male student (either accused or

complaining), then those witnesses by the investigators, and particularly including the

investigators named in this complaint, are dismissed as contradictory (and hence not believable);

in contrast, if those witnesses' statements are in the main consistent—that is, supportive of the

male student's version of the events in question—then these investigators routinely dismiss the

validity of these statement on the basis, of all things, bias; and that purportedly is because any

consistency among witnesses on behalf of a male student must be the result of such.  Don't believe

it?—consider the exact language these investigators put into their report (and this same language

appears consistently in other reports when discussing a male accused (or complainant) witness):

> At first glance, Responding Party's [the male student John
> Doe's witnesses], … seem to corroborate [the male student's]
> account [of the events of the night in question].  However, when
> grouped together, their accounts indicate a clear bias for the
> [accused male student's] version of events.  The[se witnesses']
> accounts were so similar that that they appeared to be rehearsed.

14.    Thirdly consider this—in the very same investigative report, the fact that the

accusing female witnesses' purported versions of the event was considered by the investigators

and in their charging report as believable and credible because those versions basically

corroborated what the complaining female student, at least in some of her multiple statements

prepared and written by the investigators themselves, had to say; that is, alleged  consistency in

the accounts of what occurred from the involved female student's witnesses are considered to be

convincing evidence that the male accused student is guilty of the very acts alleged!—really, one

simply can't make this up. The UI and its named investigators, and purely on the basis of

sex/gender, consistently in their so-called investigative reports—including the one at issue here—

apply convenient "witness credibility findings" and singularly on the basis of sex/gender: (1) if it

7

is a female complaining student, her avowed witnesses are believable because (a) their testimony is consistent, or (b) if inconsistent, it is because that shows they have not "coordinated" (in the sense of colluded) their testimony and hence these witnesses are not biased but instead are credible; in contrast consider the case of a male student who is accused of sexual misconduct, then his avowed witnesses are not believable in the eyes of UI investigators because (a) if their testimony is consistent, that shows bias based on collusion (the shibboleth of "getting their stories straight"); or (b) if their versions of the relevant event are inconsistent—and even on minor points—it shows that what the male student had to say occurred is not believable because what the involved male student has to says is contradicted by his own witnesses.  And make no mistake—it is UI's investigators' modus opperandi to apply these exact "rules" when the situation is reversed; that is, when the female is the supposed party who committed the sexual misconduct and the male is the complaining party (and in this situation, as if by magic, the great proportion of those complaints never see the light of day; they are rejected at the investigatory stage of the proceedings as frivolous or otherwise not supported).  And again, let's not be mistaken—the investigators gave credence to the female accusing student's allegations in this very case and based on the purported fact that her witnesses were consistent—that is, as a group, "so similar"—that it indicated what they had to say must be the truth of what actually occurred during the event in question.  And yet on the exact same basis the male student John Doe's witnesses were found to be uncredible and not worthy of belief.

<u>The OSA Investigation and Tie to the Adjudicators</u>

15.    And it does not stop there; in addition to only working on statements with the female side of the equation—and that is mostly the complainant side, but it is based on sex/gender and not petitioner versus respondent status—the investigators also universally, or nearly

universally, are female.  If more needs to be said on this subject—in addition to working only with the female party and her witnesses (and not doing so with the male party and his witnesses) and finding singularly on the basis of sex/gender, the investigators and their employer UI take yet another step—UI engages female "adjudicators" to conduct the hearings under Title IX; none to very few (if any) adjudicators are male (or otherwise identify as such).  And this important in a couple of regards—not only generally, but specifically as applied to this case.

16.     First, and this case is no exception, the UI singularly selects the "adjudicator" to hear the case—and when a male student is accused and the matter goes to the Title IX hearing, that adjudicator is female gendered.  And that is still not all—each such adjudicator is instructed by UI (and as a condition of being hired in such a case) to do, minimally, four things—and each happened in this exact case: first—constantly view the male accused student throughout the proceedings (and specifically including during video conducted hearings as was the case here); second, find that the male student acted "inappropriately" (mainly via facial expressions and body language) during aspects of the hearing while at the same time excusing the exact same purported "body language" behavior if displayed by the purported female victim student (and on the basis that such behavior, when displayed by a female, shows that she was subjected to unconsented sexual assault of abuse); third, send the investigative report to the purportedly "non-biased and independent" adjudicator where that adjudicator must read the report before the start of the hearing, and to further top it off then the UI submits that very same investigative report into the record when the charge is against a male student, and despite the report containing "findings of fact," with witness credibility findings, and which as previously alleged are written against male students (especially accused ones, but also in the rarer case where a male student accuses a female student); and fourth, in such a situation, universally having the adjudicator write the adjudicator's opinion

as if that opinion were simply excerpted from the investigation report submitted by the university and through its investigators both to the adjudicator directly before the hearing and as a designated exhibit at the hearing itself.  And the adjudicatory process involving John Doe was par for the course—this practice was followed to a T in this very case.

17.     Second, the university and its investigators treat male students differently than female students and in Title IX adjudications when it comes to the ability to call witnesses and to fully present such witness testimony—and this difference, based on sex/gender, is different than (in the sense of in addition to) the university and its investigators singularly working with the involved female party students and their witnesses (the preparations and assistance in preparing such witnesses' statements and preparing them for adjudication testimony, which they do not correspondingly do for the male student side).  Specifically, when male students seek to present testimony, and particularly expert testimony that legitimately calls into question the issue of whether a sex act occurred in violation of university policy, such testimony is routinely shut down by the investigators (and through both not even interviewing such a witness during the investigatory phase of the proceeding, as well as objecting to the testimony during the adjudicative phase of the proceeding) and not allowed in by the university's self-selected adjudicators (again, who almost run universally of the female gender).  And unsurprisingly, this is exactly what occurred in the present case involving plaintiff John Doe.  The plaintiff called a highly-qualified psychiatrist to present relevant testimony during the adjudicative phase of this matter; the expert's testimony was immediately constricted and shut-down (as it showed from a medical and scientific standpoint that the accusing female student's belated reporting and claimed version of events—particularly that she could not initially recall those events, and then, as if by magic, suddenly could "remember" in detail and only after numerous "interviews" by the UI investigators (that is,

working with her over a course of months) is not how the mind in respect to memory works at all. And this key expert testimony was shut down in the adjudicative process because this testimony was proffered by the male student; the exact opposite occurs at this university when such testimony is proffered on behalf of the female involved student.  And even when the male student requests to make a record—in a courtroom proceeding, what is known as an offer of proof—that is summarily denied (and was denied in this very case); and the same does not occur when the shoe is on the opposite gender-based foot.

18.     Third, Title IX is clear that the burden of proof—and by a preponderance of the evidence—is supposed to reside on the university/investigators who present the case on behalf of the complaining student in the adjudicative proceeding.  But that is not how it works at this university, and with these investigators, when it comes to male students—whether the male students are the accused (as is overwhelmingly typical; where it is females, and as we have seen, the matter is less likely to reach the charging and adjudicative stages) or are the purported victims, the burden is squarely placed on male students and because of their gender—and in the accused position, to somehow disprove that the incident did not happen in violation of university policy. And this complaint already has set forth how the university impedes such a male student from making that showing that by Title IX law should not have been his burden in the first instance to do so.

The Final Ruling By The Assigned Assistant Provost

19.     At the university level, the final ruling is delegated to an assigned university employee; typically, an assistant provost (and such was the case here).     The associate provost assigned to make the university's final decision in the plaintiff Doe's case was the defendant Tonya Uden-Holman.  That associate provost issued the university's final institutional ruling against the

plaintiff on February 24, 2021.  This provost does many of the university's final rulings on student expulsions for a male student's alleged violations of the student code on sexual assault cases.  And in this particular case involving the plaintiff Doe, the associate provost followed a pattern that discriminates against male students in such matters; and specifically: first, like the adjudicator, the associate provost, while purporting to make her own findings from the record, instead defers to the investigative report issued by the university's Title IX investigators, including its purported credibility findings; and as we have seen, those credibility findings are biased against  the accused male student (and his witnesses) and on bases inconsistent with the nearly universal finding that the female student's witnesses are credible (and as pled in this complaint); second, the associate provost agreed that "no weight" should be given to the plaintiff male student's expert, and that the expert's testimony was appropriately cut-short, and based on a rubber-stamp of cutting off male witness testimony, including lay and expert, and on the basis that such testimony is presented to assist the male student's case; in contrast, when a female student presents such testimony, including corresponding expert testimony, that testimony is not cut-short and is found to be credible—that is, the university's top decision maker in such cases follows the university's overall Title IX policy of crediting witnesses, including expert witnesses, testimony presented by female students while at the same time—and even when the subject matter of the respective testimony is the same—doing the exact opposite with male students.  And that is precisely what occurred in this case.  Further, and as is typical, the sanction imposed in this case, as well as in other cases that involve male accused students, was expulsion; while in similar circumstances but involving female accused students the sanctions are much less (if any are imposed at all).

COUNT I
Violation of Title IX (20 U.S.C. § 1681, et seq.)
Against the University of Iowa

20.     The plaintiff reasserts and incorporates all paragraphs hereinabove as if fully set

forth herein.

21.     Title IX of the Education Amendments of 1972 provides, in relevant part, that (20

U.S.C. §1681(a)):

> No person in the United States shall, on the basis of sex, be excluded
> from participation in, be denied the benefits of, or be subjected to
> discrimination under any education program or activity receiving
> Federal financial assistance . . . .

22.     A program or activity under Title IX includes all operations of a college, university,

or other postsecondary institution of which is extended Federal financial assistance.

23.     During all times relevant to this action, the University received significant Federal

financial assistance and all of its operations were therefore subject to Title IX and the regulations

promulgated thereunder.

24.     As set forth in detail in the foregoing fact allegations paragraphs, on the basis of

the plaintiff's sex, the university intentionally denied the plaintiff the benefits of university

programs and activities and subjected the plaintiff to discrimination.  Among other such acts, and

based on the plaintiff's sex, the university: denied plaintiff the benefits of the university's

investigation and disciplinary processes and procedures; denied the plaintiff a fair and impartial

investigation, hearing and appeal; otherwise denied plaintiff due process in the course of the

university's investigation and disciplinary proceedings; intentionally steered the investigation and

disciplinary proceedings to support a predetermined conclusion that the plaintiff engaged in sexual

misconduct; treated the plaintiff less favorably in the investigation and disciplinary proceedings to

13

support a predetermined conclusion that the plaintiff engaged in sexual misconduct; treated the plaintiff less favorably in the investigation and discipline than the university had treated persons of a different sex under similar circumstances; wrongly found that the plaintiff violated university policy or the student conduct code; and wrongfully denied the plaintiff the right to attend college and participate in college activities.

25.     The university's discriminatory conduct caused the plaintiff to suffer significant injuries and damages and as further set forth above—including expulsion from the university and reputational damages arising therefrom (including the expulsion for non-academic reasons listed on his transcript).  The plaintiff therefore is entitled to an award of damages against the university to fully compensate him for his loss, to injunctive relief for those injuries for which there is no adequate remedy at law, and to pre- and post-judgment interest on the award, plus attorney's fees, expenses, costs and disbursements.

### COUNT II
Violation of the Plaintiff's Fourteenth Amendment Equal Protection Rights (42 U.S.C. §1983)
Against the Defendants Kronstein, Gibson and Uden-Holman in their Official and Individual
Capacities

26.     The plaintiff reasserts and incorporates all paragraphs hereinabove as if fully set forth herein.

27.     The Fourteenth Amendment to the U.S. Constitution provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws."

28.     The plaintiff has a private cause of action against the defendants Kronstein, Gibson and Uden-Holman in their official and individual capacities under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights,

privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

29.    The plaintiff has a clearly-established right under the Fourteen Amendment to the Constitution to equal access to a college education at the university and to enjoy the benefits and privileges afforced to students of the university free from sex discrimination by university administrators and officials.

30.    Based on the conduct set forth in detail in the foregoing allegations of fact section of this complaint, Kronstein, Gibson and Uden-Holman, acting under color of state law and via the power and authority they possessed by reasons of their respective offices or positions with the university, with the requisite degrees of knowledge or intent, discriminated against the plaintiff and treated him unequally on the basis of his sex.  More particularly:

a.    Kronstien and Gibson discriminated against the plaintiff by steering the Title IX/student misconduct investigation of the plaintiff, and actively facilitating a biased investigation, to support their predetermined conclusion that the plaintiff, because of his sex, was guilty of the alleged misconduct.  Among other actions, because of the plaintiff's sex, these defendants did the following: gave preferential treatment and opportunities to the purported female complainant because of her sex; encourage the complainant to accuse the plaintiff of misconduct without any reasonable basis in fact; mischaracterized and changed statements of both the complainant (and her witnesses) in the investigative report and of the plaintiff (and his witnesses); made unsupported "credibility"

findings or conclusions in favor of the complainant and her witnesses based on the complainant's sex and correspondingly made adverse findings and conclusions against the plaintiff and his witnesses based on the plaintiff's sex; improperly restricted and/or failed to consider or interview critical witnesses and experts supportive of the plaintiff's version of events and on the basis of the plaintiff's sex; ignored or excused significant falsehoods, inconsistencies, and discrepancies in the complainant's (and her witnesses') testimony and on the basis of the parties' respective sex; made recommendations and conclusions of guilt and discipline that were wholly unsupported by the evidence (let alone the preponderance of the same); and provided or facilitated the presentation of biased or false testimony at the hearing.

b.      Uden-Holman discriminated against the plaintiff and on the basis of his sex to support her predetermined and biased conclusion that the plaintiff, because of his sex, was guilty of the alleged misconduct.  Among other actions, because of the plaintiff's sex, this defendant did the following: gave complete and uncritical credence to the biased and improper investigatory report submitted by the university Title IX investigators without any reasonable basis in fact, which report mischaracterized and changed statements of both the complainant (and her witnesses) in the investigative report and of the plaintiff (and his witnesses), made unsupported

16

"credibility" findings of conclusions in favor of the complainant and her witnesses based on the complainant's sex and correspondingly made adverse findings and conclusions against the plaintiff and his witnesses based on the plaintiff's sex, improperly restricted and/or failed to consider or interview critical witnesses and experts supportive of the plaintiff's version of events and on the basis of the plaintiff's sex, ignored or excused significant falsehoods, inconsistencies, and discrepancies in the complainant's (and her witnesses') testimony and on the basis of the parties' respective sex, made recommendations and conclusions of guilt and discipline that were wholly unsupported by the evidence (let alone the preponderance of the same); and on this unsubstantiated basis, simply parroted the investigative findings and conclusions as the university's final decision against the plaintiff, both substantively and on the penalty (expulsion) entry and on the basis of the plaintiff's sex.

31.      Because of the Constitutional right to be free from sex discrimination by state actors acting under color of state law is clearly established, Kronstein, Gibson and Uden-Holman are not entitled to qualified immunity or other immunity for their actions.

32.      Kronstien, Gibson, and Uden-Holman's discriminatory conduct caused the plaintiff to suffer significant injuries and damages and as further set forth above—including expulsion from the university and reputational damages arising therefrom (including the expulsion for non-academic reasons listed on his transcript).  The plaintiff therefore is entitled to an award of

damages against the university to fully compensate him for his loss, to injunctive relief for those injuries for which there is no adequate remedy at law, and to pre- and post-judgment interest on the award, plus attorney's fees, expenses, costs and disbursements.

### COUNT III
Violation of the Plaintiff's Fourteenth Amendment Due Process Rights (42 U.S.C. §1983)
Against the Defendants Kronstein, Gibson and Uden-Holman in their Official and Individual
Capacities

33.    The plaintiff reasserts and incorporates all paragraphs hereinabove as if fully set forth herein.

34.    The Fourteenth Amendment to the U.S. Constitution provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

35.    The plaintiff has a clearly-established right under the Fourteenth Amendment to substantive and procedural due process before he can be deprived of his property rights to attend college and to participate in postsecondary programs and activities at the university.

36.    The plaintiff has a private cause of action against the defendants Kronstein, Gibson and Uden-Holman in their official and individual capacities under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

37.    The plaintiff has a clearly-established right under the Fourteen Amendment to the Constitution to equal access to, procedurally and substantively, a college education at the university and to enjoy the benefits and privileges afforced to students of the university free from sex discrimination by university administrators and officials.

38.    Based on the conduct set forth in detail in the foregoing allegations of fact section of this complaint, Kronstein, Gibson and Uden-Holman, acting under color of state law and via the power and authority they possessed by reasons of their respective offices or positions with the university, with the requisite degree of knowledge or intent, discriminated against the plaintiff and deprived him of his due process rights on the basis of his sex.  More particularly:

a.    Kronstien and Gibson discriminated against the plaintiff by steering the Title IX/student misconduct investigation of the plaintiff, and actively facilitating a biased investigation, to support their predetermined conclusion that the plaintiff, because of his sex, was guilty of the alleged misconduct.  Among other actions, because of the plaintiff's sex, these defendants did the following in violation of the plaintiff's procedural rights to a full and fair charging, investigative and adjudicatory process: gave preferential treatment and opportunities to the purported female complainant because of her sex; encourage the complainant to accuse the plaintiff of misconduct without any reasonable basis in fact; mischaracterized and changed statements of both the complainant (and her witnesses) in the investigative report and of the plaintiff (and his witnesses); made unsupported "credibility" findings or conclusions in favor of the complainant and her witnesses based on the complainant's sex and correspondingly made adverse findings and conclusions against the plaintiff and his witnesses based on the plaintiff's sex; improperly restricted and/or failed to consider or

19

interview critical witnesses and experts supportive of the plaintiff's version of events and on the basis of the plaintiff's sex; ignored or excused significant falsehoods, inconsistencies, and discrepancies in the complainant's (and her witnesses') testimony and on the basis of the parties' respective sex; made recommendations and conclusions of guilt and discipline that were wholly unsupported by the evidence (let alone the preponderance of the same); and provided or facilitated the presentation of biased or false testimony at the hearing.

b.      Uden-Holman discriminated against the plaintiff and on the basis of his sex to support her predetermined and biased conclusion that the plaintiff, because of his sex, was guilty of the alleged misconduct.  Among other actions, because of the plaintiff's sex, this defendant did the following in violation of the plaintiff's procedural rights to a full and fair charging, investigative and adjudicatory process: gave complete and uncritical credence to the biased and improper investigatory report submitted by the university Title IX investigators without any reasonable basis in fact, which report mischaracterized and changed statements of both the complainant (and her witnesses) in the investigative report and of the plaintiff (and his witnesses), made unsupported "credibility" findings of conclusions in favor of the complainant and her witnesses based on the complainant's sex and correspondingly made

adverse findings and conclusions against the plaintiff and his witnesses based on the plaintiff's sex, improperly restricted and/or failed to consider or interview critical witnesses and experts supportive of the plaintiff's version of events and on the basis of the plaintiff's sex, ignored or excused significant falsehoods, inconsistencies, and discrepancies in the complainant's (and her witnesses') testimony and on the basis of the parties' respective sex, made recommendations and conclusions of guilt and discipline that were wholly unsupported by the evidence (let alone the preponderance of the same); and on this unsubstantiated basis, simply parroted the investigative findings and conclusions as the university's final decision against the plaintiff, both substantively and on the penalty (expulsion) entry and on the basis of the plaintiff's sex.

39.     Because of the Constitutional right to be free from sex discrimination by state actors acting under color of state law is clearly established, Kronstein, Gibson and Uden-Holman are not entitled to qualified immunity or other immunity for their actions.

40.     Kronstien, Gibson, and Uden-Holman's discriminatory conduct caused the plaintiff to suffer significant injuries and damages and as further set forth above—including expulsion from the university and reputational damages arising therefrom (including the expulsion for non-academic reasons listed on his transcript).  The plaintiff therefore is entitled to an award of damages against the university to fully compensate him for his loss, to injunctive relief for those

injuries for which there is no adequate remedy at law, and to pre- and post-judgment interest on the award, plus attorney's fees, expenses, costs and disbursements.

PRAYER FOR RELIEF

WHEREFORE, the plaintiff prays for judgment against the defendants and respectively asks the Court to award the following relief:

a.      Order injunctive relief as follows: (i) the university must immediately reinstate the plaintiff as a student in good standing with all rights and privileges commensurate with that status; and (ii) the university must expunge from the plaintiff's records all references to any charges or findings of sexual misconduct, together with any references of any disciplinary actions taken against the plaintiff based on those charges or findings.

b.      As against the university and against Kronstein, Gibson and Uden-Holman acting in their individual capacities, award the plaintiff compensatory damages and in an amount to be determined at trial.

c.      Award the plaintiff his attorney's fees, disbursements, and costs pursuant to 42 U.S.C. § 1988(b) or pursuant to any other statute or common law doctrine providing for the award of attorney's fees, disbursements, and/or costs.

d.      Award the plaintiff all interest as allowed by law.

e.      Grant such other and further relief as the Court deems just and proper in the premises.

Plaintiff further demands a jury trial on all matters and issues triable by jury.

/s/ William L. Kutmus
William L. Kutmus
Lead Counsel
/s/ Trever Hook
Trever Hook
Kutmus, Pennington & Hook, P.C.
5000 Westown Parkway, Suite 310
West Des Moines, IA 50266
Tel: (515)288-3339
Fax: (515)288-8629
Email: jodi@kphlawfirm.com
Email: trever@kphlawfirm.com

/s/ S.P. DeVolder
S.P. DeVolder
The DeVolder Law Firm, P.L.L.C.
1228 Sunset Drive, Suite C
Norwalk, IA 50211
Tel: (515)981-5150
Fax: (515)981-5156
Email: steven.devolder@devolderlawfirm.com

ATTORNEYS FOR THE PLAINTIFF