IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE, | Case No.: 3:22-cv-00001-SMR-SBJ |
| Plaintiff, | |
| v. | RESISTANCE TO THE MOTIONS TO STRIKE AND DISMISS |
| THE UNIVERSITY OF IOWA; KRISTA KRONSTEIN, in her individual and official capacity as Investigator in the Office of Student Accountability; KRISTAL GIBSON, in her individual and official capacity as Associate Director in The Office of Student Accountability; And TONYA UDEN-HOLMAN, in her individual and official capacity as Associate Provost for Undergraduate Education, | |
| Defendants. | |

The plaintiff John Doe, for his resistance to the defendants' motion to strike or dismiss, states the following:

    A.  Motion to Dismiss.

1.    The defendants move to dismiss the complaint on the alternative grounds that (a) the complaint is too prolix (it contains too many words as opposed to a short and plain statement of the claim showing probable entitlement to relief under Fed. R. Civ. P. 8(a) (along with rule 8(d)(1)); or (b) the complaint is an impermissible "shotgun" submission because each of the counts that set forth the bases for relief incorporates the fact pleading section of the complaint instead of incorporates, for each individual count, different paragraphs of the general fact statement, and in this regard, it purportedly violates of the same two cited rule 8 standards.

2.     We'll start with the first assertion—rather than constituting a short and plain statement of the claims with concise and direct fact allegations, the complaint is too prolix and "basically condemns the defendants." (As for the latter, what complaint doesn't?—this is a lawsuit here, and any lawsuit that actually states a claim "condemns" a defendant for violating the plaintiff's legal rights; litigation in a rhetorical sense is a contact sport, it is not ballroom dancing; and more on this below). The authorities cited by the defendants (all in footnote one of their motion) deal with obviously prolix complaints—those of 105 pages, or 226 pages, or of similar length). In the case at bar, the plaintiff's complaint is a concise 23 pages, of which 2 of those pages constitute the pleading heading (the first page) and the signatory lines (the last page). That is, the entirety of the written portion of the complaint is concise, direct and succinctly stated in a total of 21 pages—miles short of any length of complaint discussed in the defendants' case law citations.

3.     And the defendants cite only one paragraph (out of 40, and not counting subparagraphs) of the plaintiff's complaint as being either prolix or condemning—that being paragraph 14. Paragraph 14 is the third paragraph (following paragraphs 12 and 13 of the complaint) that sets forth a group of precise facts that show how the OSA investigation conducted by the defendants was rigged against male students, including the plaintiff, as opposed to female students: that is, how the defendants systemically—in the Title IX investigatory and adjudicative process—discriminated against male students including specifically the plaintiff in this case (and where the other involved student, either complainant or accused, is female). And as for this paragraph, it concisely sets forth, by separately lettered sentences, succinct and precise facts respecting this discrimination on the basis of sex/gender. Take subsection (a)—it directly and precisely details how the defendants (through the OSA process) handle evidence offered in support

of male students versus evidence offered in support of female students, and how such evidence (including testimony) at both the investigatory, charging and adjudication stages is *differently treated for credibility purposes on the basis of sex.*  Likewise, subparagraph (b) shows the same when testimony proffered by the male student versus the female student is treated when such proffered testimony is inconsistent: the subparagraph concisely sets forth how defendants construe those inconsistencies, and *on the basis of the sex/gender of the student in whose favor the testimony is proffered*.  The complaint cannot be any clearer, and it is easy for the defendants to respond to it by answer.

4. And this next leads into a glaring deficiency in the defendants' motion to dismiss (as well as their motion to strike).  Nowhere in that motion do the defendants state the legal standard for a plaintiff to state a Title IX claim, and associated section 1983 due process and equal protection also predicated on sex discrimination in the university investigatory and adjudication process, and in the context of a male student suing on these claims for his being expelled from a university on the grounds that he committed sexual assault or misconduct in violation of the institution's Title IX and student conduct policies.  What each of the salient cases make clear is that to state such a claim, the male student must plausibly allege that his expulsion was "on the basis of sex."  20 U.S.C. § 1681(a).  Originally, the federal courts applied one of two tests to determine if a viable claim was set forth in the male student's complaint arising from such a disciplinary proceeding—(a) the "erroneous outcome" test, which required the male student to show that he was wrongly found to have committed the misconduct, and there was a causal connection between the flawed outcome and sex-based bias inhering in it (*Yusuf v. Vassar College*, 35 F.3d 709, 715 (2nd Cir. 1994)); or (b) the "selective enforcement" test, which did not focus on the male student's actual innocence but rather whether the initiation of the proceeding or the

severity of the punishment imposed was affected by that student's sex (*id.*). Now, most federal courts have adopted a different and more direct test, which test was first set forth in a seventh circuit court of appeals decision and that more closely tracks the actual language of the Title IX statute—do the alleged facts, if true, raise a plausible inference that the university discriminated against [the now federal court plaintiff] on the basis of sex? *Doe v. Purdue Univ.*, 928 F.3d 652, 667-68 (7th Cir. 2019). And that is the test the eighth circuit has since sanctioned. *Doe v. Univ. of Ark. – Fayetteville*, 974 F.3d 858, 864-65 (8th Cir. 2020). And in the most recent federal circuit court case of which the plaintiff is aware, a court applying this very test concluded that the expelled male student adequately pled such claims (both Title IX and associated claims) by plausibly alleging the university in its investigative and adjudication process applied its charging, investigative and/or decision-making procedures differently depending on the sex/gender of the student accused—and because of this, that circuit court reversed the district court's ruling that dismissed the complaint at the outset. *Doe v. Princeton Univ.*, ___ F.3d ___, No. 21-1458 (3rd Cir., March 23, 2022). Do note that the factual allegations of the plaintiff's complaint in the case at bar in structure mirror those involved in the just cited third circuit case—the complaint plausibly alleges that (a) how the defendants conduct an investigation when a male student is involved is directly affected by his sex (the investigation is conducted differently as it respects the female and male students; complaint paragraphs 9-14), (b) how the initial adjudicators are chosen by the defendants on the basis of their sex, and how those university-paid adjudicators are taught to mirror or otherwise in essence adopt the defendants' investigation findings (submitted by the defendants during the university adjudicative process directly to the adjudicator) that are differentiated on the basis of sex (paragraphs 15-18) and (c) how the same sex differentiation process, and employed

against males, continues on into the university's final adjudication process (at the provost level) (paragraph 19).

5.  All of this segues into the defendants' claim that the complaint is worded in too condemnatory a manner and further takes an impermissible "shotgun" approach. Recall we just said a lawsuit by its very nature is "condemnatory" in nature (by definition it must plausibly alleged legally cognizable wrongdoing by the defendants and against the plaintiff). And the third circuit in its recent *Princeton Univ.* case recognized this right-off-the-bat (in its opening paragraph of that opinion):

> There are two sides to every story. But a complaint need not tell both. John Doe's Complaint plausibly tells his side, alleging that Princeton discriminated on the basis of sex while investigating Title IX claims filed against him. Discovery may not bear out Doe's account, but he has satisfied his burden at this early stage. So we will vacate the District Court's order dismissing the matter and remand for the rest of the story to develop.

So too with the John Doe plaintiff in this case. The defendants may think they are being unnecessarily "condemned" by the allegations in the complaint—but the complaint tells the plaintiff's side of the story. If the defendants disagree with that side, they can tell their own side of the story as this litigation progresses.

6.  So now to the defendants' claim that the complaint adopts a "shotgun" approach. The defendants misstate the federal rule, and no doubt because (as we have just seen) they do not discuss at all what must be "plausibly alleged" for the plaintiff to assert for pleading purposes his claims stated in this action. As we have just seen, each of the plaintiff's claims is based on the detailed allegations that the defendants, and in the context involved (the Title IX action and associated section 1983 claims), impermissibly discriminated against the plaintiff on the basis of his sex. And in that regard, the claims are based on the same core factual allegations—they do not

5

differ, in, say, a complaint that alleges breach of contract and a tort claim (misrepresentation) would—and the individual counts are specific as to which defendant party is responsible for each such claim.  So the plaintiff's complaint does not contain extraneous factual allegations respecting the counts; instead, it specifies the defendant(s) subject to each count and why.  Dividing up the factual allegations per count in this circumstance is unwarranted (the factual allegations as a whole are relevant to each count—recall as we just observed in paragraph 4 of this resistance that the acts of the defendants *are interrelated* on how discrimination on the basis of sex occurs from the start of the process (investigation and charging), to the next phase of the process (the initial adjudication hearing and ruling) to the final phase of the process (the final university ruling at the provost level)).  And as we further discussed, in the complaint it is the plaintiff who gets to tell his side of the story.

      B.  Motion to Strike.

   7.  The defendants alternatively move to strike the complaint—but, conspicuously, they do not point to any specific word, phase or section of the complaint that should be stricken (let alone tell us the bases why); the defendants at paragraph 6 of their motion just generally complain that, to the extent any words of the complaint are "redundant, immaterial, impertinent, or scandalous" then such words should be stricken.  Well, the defendants themselves—the party with the burden of proof for they filed the pending motion—point us to no such words.  And to the extent the defendants are simply incorporating their position that the complaint makes them look bad, well, we already have addressed that—complaints by definition are not kind to defendants but are designed for the plaintiff to tell his story as to what occurred.  The defendants are not entitled to tell the plaintiff how to write his complaint, what words to use, and to be sure that the

defendants' sensibilities are genteelly treated. The motion to strike, like the motion to dismiss, is baseless.

        C. Alternatively, the Court should Order the Complaint to be Amended.

8. In the event that the court agrees with any aspect of the defendants' motion—such as, for instance, that the complaint employs an improper "shotgun" approach—then the appropriate remedy is for the court to order the plaintiff to amend the complaint to cure any such deficiency and under rule 8; for the reasons set forth above any such deficiency is easily correctable by amendment (note: the defendants here do not claim the complaint does not plausibly allege facts to support the claims raised; as noted, the defendants do not even discuss the applicable pleading standard given the claims raised in the complaint and how such a standard purportedly has not been met).

    WHEREFORE, the plaintiff prays that the court deny the motion to dismiss or strike in the entirety; alternatively, to the extent the court may grant such motion in whole or in part, that the court should order the plaintiff to amend the complaint to cure any such perceived pleading deficiency.

| | |
|---|---|
| /s/ William L. Kutmus | /s/ S.P. DeVolder |
| William L. Kutmus | S.P. DeVolder |
| Lead Counsel | The DeVolder Law Firm, P.L.L.C. |
| /s/ Trever Hook | 1228 Sunset Drive, Suite C |
| Trever Hook | Norwalk, IA 50211 |
| Kutmus, Pennington & Hook, P.C. | Tel: (515)981-5150 |
| 5000 Westown Parkway, Suite 310 | Fax: (515)981-5156 |
| West Des Moines, IA 50266 | Email: steven.devolder@devolderlawfirm.com |
| Tel: (515)288-3339 | |
| Fax: (515)288-8629 | |
| Email: jodi@kphlawfirm.com | |
| Email: trever@kphlawfirm.com | |

ATTORNEYS FOR THE PLAINTIFF